# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| TOBIAS M. LATTIER<br>    LA. DOC # 488409<br>VS. | CIVIL ACTION NO. 09-0339<br><br>SECTION P<br><br>CHIEF JUDGE JAMES |
| WARDEN ALLEN CUPP,<br>ET AL. | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Tobias M. Lattier, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on March 2, 2009.[1] Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Richland Detention Center (RDC), Rayville, Louisiana and complains of conditions of confinement at that institution. He sued RDC Warden Allen Cupp, Lt. Ham, the RDC Medical Department[2], and food service Deputies Boone and Broussard praying for compensatory damages of $80 million. This complaint has been referred to the undersigned for review, report,

---

[1] The original complaint also listed as "additional plaintiffs" the following inmates: (1) Leonard Woolens, Efrem F. O'Gwin, Sr., Charlie Daniels, and Daniel Wilson. [rec. doc. 1, ¶III] Local Rule 3.2W provides, "Each pro se prisoner shall file a separate complaint ... except where multiple prisoners are asserting the same claims arising out of the same facts." While some of the claims appeared to be common to all of the plaintiffs, it appeared that some were not and therefore, a separate complaint was filed for each plaintiff and each was directed to either submit the full cost of suit or an in forma pauperis application. See *Woolens v. Cupp*, No. 3:09-cv-0340; *O'Gwin v. Cupp*, No. 3:09-cv-0342; *Wilson v. Cupp*, No. 3:09-cv-0344; and, *Daniels v. Cupp*, No. 3:09-cv-345. In his amended complaint, plaintiff clarified that these individuals were witnesses, not plaintiffs.

[2] As plaintiff was advised in the memorandum order, his claim against the medical department should be dismissed. Fed.R.Civ.P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether this defendant has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. A medical department is not a "juridical person" as defined by the Louisiana Civil Code.

and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

In his original complaint, plaintiff alleged several condition of confinement claims. More specifically, he complained that on some unspecified date, he had two of his toenails removed. He was given written permission to wear slippers to ease the pain and to prevent infection and promote healing. On January 15, 2009, Lt. Ham disregarded the medical permission slip and ordered plaintiff to either wear his shoes or report to lock-down. Plaintiff opted to wear his shoes and as a result he experienced pain and swelling.

Plaintiff also complained that despite being incarcerated at RDC on April 22, 2008, the facility "has yet to provide and perform adequate health screening." This was of some concern to plaintiff because he learned from another source that he is infected with an S.T.D. (Sexually Transmitted Disease). According to plaintiff, he was examined by a physician, "... yet he ... failed to do an adequate health screening ... to find out what else my body might be in physical danger of..."

Further, plaintiff complained that RDC did not employ a dietician and therefore the inmates were forced to eat "unhealthy foods and too much starch." According to plaintiff, staff and other inmates were allowed to spit tobacco around the food in the kitchen and, on occasion, parts of gloves were found in the food.

Another of plaintiff's complaints concerned an incident on December 22, 2008, in which plaintiff witnessed Lt. Ham slap inmate Leonard Woolens. According to plaintiff, "... Ham ... came inside the dorm and told me 'I'll be next if I don't go sit my stupid ass down.'" Further,

according to plaintiff, since his arrival at RDC there had been only one fire drill.

Finally, due to overcrowding, plaintiff stated that he was required to sleep on the floor for a period of 2 months following his arrival at RDC on April 22, 2008.

Given the lack of specific information in his original complaint to support his allegations that his constitutional rights had been violated, this court issued a memorandum order [Doc. 4], directing plaintiff to amend his complaint. The memorandum order advised him that, without more, the conclusory allegations in his complaint failed to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure which, although it does not require explicit detail, it does require a plaintiff to allege specific facts which support the conclusion that his constitutional rights were violated by each person who is named as defendant. Plaintiff was also advised that he did not allege that the supervisory official named as defendant (in the current posture of the case, Warden Cupp) was personally involved in the act causing the alleged constitutional deprivations, or that he implemented a policy so deficient that the policy itself acts as a deprivation. Plaintiff was advised that without alleging personal involvement or policy implementation, the statements in his complaint as to this defendant were insufficient to hold the defendant liable under §1983. Further, plaintiff was informed that his complaint failed to set forth a cause of action for denial of medical care, and that allegations of negligent conduct cannot serve as the basis for a §1983 claim. He was also advised that the "medical department" does not appear to be a juridical person, or a defendant capable of being sued.

On June 5, 2009, plaintiff filed a response [Doc. 5] to the court's memorandum order. The amended complaint provided the court with some, but in no means all, of the information requested in the memorandum order. Nevertheless, combining the information from both of

plaintiff's complaints gives the court the following details on the allegations made herein.

On January 12, 2009, plaintiff was sent to medical and examined by Nurse Smith. For reasons not stated by plaintiff, Nurse Smith removed two of plaintiff's toe nails. Plaintiff was given a medical slip stating that he was to wear slippers rather than shoes for ten days to help prevent pain, infection, and swelling. On January 15, 2009, defendant Ham saw plaintiff in the slippers and was shown the medical slip instructing plaintiff to wear slippers rather than shoes when he went to the chow hall or any activity outside of the dorm. In response to the medical slip, defendant Ham stated that the piece of paper didn't mean anything to him, and then ordered plaintiff to either wear his shoes or report to lock-down. Plaintiff opted to wear his shoes which caused his toes to get infected and swollen, causing him pain. As a result of wearing the shoes, plaintiff's toes remained infected, necessitating him going to the medical department for two weeks to have medication and clean dressing applied to his toes. Plaintiff states that the problem was on-going for over a month.

In regard to plaintiff's complaints that RDC did not have a dietician and that the food was inadequate or unsanitary, he stated that on two occasions, he found glove pieces in his food. Thus, he had to throw away his food and go hungry for the remainder of those two days. Plaintiff informed defendants Broussard and Boone of this problem.

In his amended complaint, plaintiff did not provide additional information on any of the other claims made in his original complaint. More specifically, these claims (as discussed above and in the memorandum order) are that the facility failed to provide an adequate health screening; that he was required to sleep on the floor for a period of 2 months; that after he witnessed Lt. Ham slap another inmate, Ham told plaintiff that he would be next if I don't sit

4

down; and that since his arrival at RDC there had been only one fire drill.

## LAW AND ANALYSIS

### Frivolity Review

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous,[3] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1). A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss as frivolous a prisoner suit on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under §1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under §1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*, 923 F.Supp. 931, 942-43 (S.D.Tex.1996). A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427,

---

[3] A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

5

1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

As previously discussed, plaintiff was specifically advised that his original complaint was deficient and was ordered to amend that complaint to state a viable claim. Despite the information supplied in his amended complaint, it nevertheless failed to cure all of the noted deficiencies.

### Eighth Amendment Claims

In order to establish an Eighth Amendment violation, an inmate must establish both a subjective and objective component. The <u>objective</u> requirement necessitates that the inmate allege a sufficiently serious deprivation. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Only those deprivations denying 'the minimal civilized measure of life's necessities are sufficiently grave' to constitute cruel and unusual punishment." *Id*. (*quoting*, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). While no precise definition determines what type of deprivations are construed as ones which deny an inmate the "minimal civilized measures of life necessities," the United States Supreme Court has held that such things as food, warmth, exercise and safety fall in into this category, *Wilson*, 111 S.Ct. at 2327, as well as adequate medical care, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 251 (1976), and protection from physical abuse by other inmates, *Farmer*, 114 S.Ct. 1976-1977.

The <u>subjective</u> component requires that a prison official act with a sufficiently culpable state of mind. *Farmer*, 114 S.Ct. at 1997. A prison official's culpability is measured by deliberate indifference which is defined as *knowing and disregarding an excessive risk to inmate health or*

6

*safety*. *Farmer,* 114 S.Ct. at 1979 (emphasis added). Deliberate indifference is established by showing that the defendant officials were "aware of facts from which an inference of excessive risk to the prisoner's health and safety could be drawn and that they actually drew an inference that such harm existed." *Herman v. Holiday*, 238 F.3d 660 (W.D. La. 2001)(*quoting, Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law. *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997). Accordingly, negligence and even gross negligence does not implicate the Constitution and does not provide a basis for a §1983 claim. *Farmer,* 114 S.Ct. at 1978 ("deliberate indifference entails something more than mere negligence...").

### *Food Claims*

In the present case, plaintiff complains that RDC did not employ a dietician and therefore the inmates were forced to eat "unhealthy foods and too much starch." According to plaintiff, staff and other inmates were allowed to spit tobacco around the food in the kitchen and that on two occasions, parts of gloves were found in the food. As a result, he had to throw away his food and go hungry for the remainder of those two days. Plaintiff's complaints of an inadequate diet and unsanitary food preparation simply fail to set forth a cause of action. As previously stated, in order to establish an Eighth Amendment violation of this sort, an inmate must allege a sufficiently serious deprivation and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to constitute cruel and unusual punishment. An inmate must also establish that a prison official acted with a sufficiently culpable state of mind measured by deliberate indifference which is defined as knowing and disregarding an excessive risk to inmate health or safety. Deliberate

7

indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind.

The Eighth Amendment requires that [prisons] provide inmates with 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)). The Fifth Circuit has determined that if prisoners regularly and frequently suffer from food poisoning with truly serious medical complications as a result of particular, known unsanitary practices which are customarily followed by the prison food service organization, and the authorities without arguable justification refuse to attempt remedial measures, the requisite deliberate indifference might well be manifested or inferred. But such deliberate indifference is certainly not even suggested by a single incident . . . . *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). Plaintiff has failed to describe any complications resulting from "particular, known unsanitary practices which are customarily followed" by RDC. Although given the opportunity to explain and further elaborate on his complaints in the court's memorandum order, he has failed to provide anything more than conclusory allegations regarding the food served by RDC.

Further, plaintiff's complaints make it clear that he was not denied anything close to a minimal measure of life's necessities. Other than hunger pains, he has not alleged any specific physical harm or adverse physical effects. His allegations do not rise to the level of an Eighth Amendment violation and these claims should be dismissed as frivolous and for failure to state a claim upon which relief may be granted. [4]

---

[4] Plaintiff's only claims against defendants Doone and Broussard are that he informed them of the pieces of gloves found in his food. The allegations against these defendants are against them in their official capacity as officers and employees of the jail. However, they can be liable under § 1983 in their official capacity, only if their actions were in execution of an unconstitutional policy or custom which inflicted injury or damage upon the plaintiff.

### *Sleeping on the Floor*

Plaintiff claims that due to overcrowding he was required to sleep on the floor for a period of 2 months. Plaintiff did not elaborate on this situation in his amended complaint. He did not allege any type of injury sustained as a result of having to sleep on the floor. His conclusory allegations certainly do not establish that he suffered a sufficiently serious deprivation--- one in which he was denied the minimal civilized measure of life's necessities. Only such deprivations are sufficiently grave to constitute cruel and unusual punishment. Nor has plaintiff shown that the defendants acted with deliberate indifference–which encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind– in this matter.
His allegations do not rise to the level of an Eighth Amendment violation and these claims should be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

### *Medical Care Claims*

Plaintiff also complained that despite being incarcerated at RDC since April 22, 2008, the facility failed to provide an adequate health screening. Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual

---

*Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The plaintiff, therefore, must allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage. See *Collins v. City of Harker Heights,* 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir.1982), overruled on other grounds, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.1986). To establish official capacity liability, plaintiff is required to establish the existence of such a policy and that the officers were executing the established policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), on reh 'g, 739 F.2d 993 (5th Cir.1984); see also *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). Even under the broadest reading, plaintiff has not shown that a policy, practice or custom led that to the alleged constitutional violations or that these defendants had anything to do with it. For these reasons, plaintiff's claims against these defendants are is frivolous.

9

punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered my the medical staff does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus

the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)(A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra*.

In the instant case, the information contained in plaintiff's complaint indicates that plaintiff received medical treatment, including various examinations. Plaintiff's allegations, at most, state a disagreement amongst himself and the medical staff regarding the procedures to address his medical issues. As previously stated, such claims are insufficient to establish that a constitutional violation has occurred, and based upon all allegations of plaintiff, the undersigned concludes that the defendants did not act with deliberate indifference to plaintiff's serious medical needs. Furthermore, the existence of continuous medical care normally precludes a finding of deliberate indifference on the part of prison officials. *Banuelos v. McFarland*, 41 F.3d 232, 235(5th Cir. 1995); *Mayweather, supra*. Plaintiff admits, and his pleadings demonstrate, that he had many medical appointments. Plaintiff's claims do not establish that a constitutional violation has occurred. Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. See *Shaw v. Murphy*, 121 S.Ct. 1475 (2001); *Procunier v. Martinez*, 94 S.Ct.

11

1800 (1974). The decision regarding plaintiff's treatment is best left to the prison officials. The facts of this matter clearly do not demonstrate that the defendants "refused to treat him, ignored his complaints, intentionally treated [plaintiff] incorrectly or evince a wanton disregard" for plaintiff's medical needs. The evidence before the court simply does not support a finding of deliberate indifference. Accordingly, this court finds that plaintiff's medical care claims should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

### *Verbal Abuse*

Plaintiff also complained that after he witnessed defendant Ham slap another inmate, Ham told plaintiff that he would be next if he didn't sit down. To the extent that plaintiff claims that this represents abuse or harassment, such fails to raise a federal constitutional claim. A plaintiff can successfully invoke §1983 only when his federal statutory or constitutional rights have been violated. The Fifth Circuit has held that verbal abuse or harassment by a prison guard does not amount to an Eighth Amendment violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993)).

### *Supervisor Liability*

As previously stated, plaintiff sued Warden Cupp. In the court's amend order, plaintiff was advised that his claims did not establish liability on the part of the warden. Plaintiff's subsequent filing did not remedy that defect. Specifically, "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice,*

12

*Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Plaintiff has not alleged facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by this defendant.

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint against Warden Cupp, the RDC Medical Department, food service Deputies Boone and Broussard be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**IT IS FURTHER RECOMMENDED** plaintiff's claims against Lt. Ham alleging verbal abuse or harassment be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), preserving plaintiff's claims against Lt. Ham based on the allegations that Lt. Ham required plaintiff to wear shoes despite having been informed of his need to wear slippers after removal of his toenails .

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following**

**the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED,** in chambers, in Monroe, Louisiana, this 18th day of August, 2009.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE